
FILED
DISTRICT COURT OF GUAM
FEB 25 2019
JEANNE G. QUINATA
CLERK OF COURT

# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAYMOND JOHN MARTINEZ and<br>JUANITA MARIE QUITUGUA MOSER,<br><br>Defendants. | CRIMINAL CASE NO. 15-00031<br><br>DECISION AND ORDER MEMORIALIZING THE JANUARY 29, 2019 ORAL RULING DISMISSING THIS CASE *WITHOUT PREJUDICE* |

Before the court are Defendants' Motion to Dismiss the Second Superseding Indictment with Prejudice (ECF No. 594) and the Government's Motion to Dismiss Without Prejudice (ECF No. 606). For the reasons stated herein, Defendants' motion is **DENIED,** and the Government's motion is **GRANTED**.

## I. BACKGROUND

Defendants Raymond John Martinez and Juanita Marie Quitugua Moser have twice been tried on the Government's Second Superseding Indictment ("Indictment"), which charges both Defendants with Count I: Conspiracy to Distribute Methamphetamine Hydrochloride, and Count II: Possession with Intent to Distribute Methamphetamine Hydrochloride.[1] *See* ECF No. 223. The first trial resulted in a hung jury as to both counts, with 9/12 jurors voting to convict on Count I, and 6/12 jurors voting to convict on count II. The second retrial also resulted in a hung jury, with 7/12 jurors voting to convict on both counts.

---

[1] The Second Superseding Indictment also contains two counts related to money laundering, but those counts were severed from the methamphetamine charges. *See* Minute Order of June 2, 2017, ECF No. 261. Defendants were not tried on the money laundering counts.



After this court declared a mistrial in the second trial, Defendants moved to dismiss the Indictment with prejudice pursuant to this court's "inherent authority" to ensure "fundamental fairness." Def. Mot., ECF No. 594. The Government opposed, arguing that the court lacked the authority to dismiss the indictment under these circumstances. Gov. Opp., ECF No. 595. This court ordered additional briefing on this issue, which the parties provided. *See* Def. Supp., ECF No. 597; Supp. Response, ECF No. 599; Supp. Reply, ECF No. 603.

While Defendants' motion to dismiss with prejudice was pending, Defendants were indicted in the Central District of California and the Government moved to dismiss the present case *without* prejudice. *See* Gov. Mot., ECF No. 606. Defendants opposed that motion, arguing that dismissal should be with prejudice. Def. Opp., ECF No. 608. The Government replied. Gov. Reply, ECF No. 609. In the separate but related removal proceeding, *United States v. Martinez*, MJ 19-00003, the Government submitted exhibits that the Government claims to be evidence that the Defendants engaged in jury tampering. Gov. Exhibits, ECF No. 16. Because the parties agreed on a dismissal, the only issue for the court's consideration is whether the dismissal is with or without prejudice. The court held hearings on this sole issue on January 28 and 29, 2019. At that hearing, the parties discussed the Government's exhibits, filed in MJ 19-00003, as they argued their motions. Following argument, the court made its oral rulings, which are memorialized in this written order.

## II. DISCUSSION

### A. Defendants' Motion to Dismiss with Prejudice

In their Motion, Defendants urge this court to dismiss the Indictment with prejudice pursuant to this court's "inherent authority" to ensure adherence to "fundamental fairness." Mot. at 5, ECF No. 594. Defendants cite to several district court decisions that have invoked the

court's "inherent authority" to dismiss indictments after consecutive juror deadlocks. *Id.* at 5. In each of those cases, the district courts looked at a variety of factors to determine whether dismissal was in the interest of fundamental fairness, including how many jurors voted to acquit, the judicial resources devoted to the mistrials, the likelihood of a different outcome in the event of a third trial, the hardship a defendant will suffer as a result of a third trial, the strength of the government's case, the conduct of the prosecutor, and the gravity of the criminal charges against the Defendant. *See United States v. Wright*, 2017 U.S. Dist. LEXIS 47436 (W.D. Penn., Mar. 30, 2017), *rev'd* 913 F.3d 364 (3d Cir. 2019)[2]; *United States v. Rossoff*, 806 F. Supp. 200, 202 (C.D. Ill. 1992); *United States v. Ingram*, 412 F. Supp. 384, 385-86 (D.D.C. 1976).

The Government counters that district courts within the Ninth Circuit lack the "inherent authority" to dismiss an indictment due to juror deadlock. Opp. at 2, ECF No. 595 (citing *United States v. Miller*, 4 F.3d 792 (9th Cir. 1993)). In *Miller*, the Court of Appeals reviewed a district court's decision to dismiss all counts in which the government "did not obtain a majority of juror votes to convict." 4 F.3d at 794. The Ninth Circuit reversed, holding that "the fact that the jury was hung by a six to six vote, or by one even more favorable to the defendant, is not an adequate basis for dismissal under the court's supervisory power." *Id.* at 796. The *Miller* court reasoned that the trial court's dismissal did not fall within any of the "three legitimate bases for the exercise of supervisory power: to implement a remedy for the violation of a statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." *Id.* at 795. The Government reads *Miller* to mean that district courts cannot dismiss an indictment "simply because of two mistrials." Gov. Opp. at 2, ECF No. 595.

---

[2] The Third Circuit's reversal of the district court's decision in *Wright* was published after Defendants filed their motion to dismiss.

3

Defendants respond that the Ninth Circuit has since expanded district court's supervisory power that *Miller* had constrained. Def. Supp. at 10, ECF No. 597. In *United States v. W.R. Grace*, 526 F.3d 499, 511 n.9 (9th Cir. 2008), the Ninth Circuit rejected the idea that inherent power was limited to the "three specific areas" noted by *Miller*, and "return[ed] to the understanding of inherent power" recognized in a prior Ninth Circuit decision. That prior decision, *Richter v. United States*, had noted that district courts have the "responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness," and that "[i]t would be ill-advised to limit improvidently this inherent power for fear of misuse." 488 F.2d 170, 173-74 (9th Cir. 1973). Defendants cite one recent district court within the Ninth Circuit that supports their interpretation of inherent power. *United States v. Khan*, 2014 WL 1330681 (E.D. Cal. Apr. 1, 2014) (concluding that the district court has the inherent power to dismiss an indictment following a mistrial to juror deadlock, but declining to exercise that power).

Apart from *Miller*, only one other appellate court has weighed in on the issue of a district court's "inherent authority" to dismiss an indictment due to consecutive hung juries. *See United States v. Wright*, 913 F.3d 364 (3d Cir. 2019). In *Wright*, the Third Circuit Court of Appeals very recently reversed a decision by a district court to invoke its "inherent authority" to dismiss an indictment with prejudice after two hung jury mistrials. *Id.* at 368. The Third Circuit began by examining Federal Rule of Criminal Procedure 31, which permits the Government to retry a case if the jury is unable to reach a verdict. *Id.* at 370. "[N]othing in the rule or its commentary provides or even suggests a limit on the number of retrials it may conduct." *Id.* Next, the *Wright* court recognized that district courts have inherent authority to do some things, but that inherent authority (1) "'must be a reasonable response to the problems and needs confronting the court's fair administration of justice,' and (2) it 'cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute.'" *Id.* at 371 (citing *Dietz v. Bouldin*,

136 S. Ct. 1885, 1892 (2016)). In light of those requirements, the *Wright* court held that "a court may dismiss an indictment based upon its inherent authority only if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy was available to address the prejudice." *Id.* Because there was no evidence of government misconduct, the district court's dismissal after the second mistrial amounted to an "intru[sion] on the Executive's domain," in violation of the separation of powers. *Id.* at 374.

This court finds the *Wright* decision well-reasoned and in line with United States Supreme Court and Ninth Circuit precedent. *See Dietz*, 136 S. Ct. at 1892, *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) ("[A] district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."); *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985) ("[T]he separation-of-powers principle suggests that the creation of a rule by supervisory power can be justified only when a recognized right has been violated."). Under the *Wright* standard, dismissal pursuant to inherent authority is proper only if (1) the Government engaged in misconduct, (2) the defendant was prejudiced, and (3) no less severe remedy exists to address the prejudice. *Id.* at 371.

Applying the *Wright* standard to the present case reveals that dismissal with prejudice is not warranted. There has been no evidence of government misconduct in the first two trials. Indeed, in their briefing, Defendants admit that U.S. Attorney Fred Black "prosecuted this case with diligence and professionalism during the previous two trials." Def. Supp. at 33, ECF No. 597. Nor has there been prejudice to Defendants in the sense described in *Wright*. *See* 913 F.3d at 372 ("[T]here is no prejudice to a defendant simply because he faces the anxiety and the normal stress of undergoing a trial. Rather, prejudice sufficient for the District Court to intervene in a proper prosecution based upon its inherent authority occurs only where the Government engages in actions that place a defendant at a disadvantage in addressing the charges." (internal citations

omitted)). Given the lack of government misconduct and lack of prejudice, dismissal with prejudice is unwarranted under *Wright*.

Even if this court were to adopt Defendants' preferred factor-based tests that were used by the *Rossoff*, *Ingram*, and *Wright* district courts, Defendants fare no better. The only factor that weighs in Defendants' favor is that they will undoubtedly suffer hardship from having to undergo a third trial. Indeed, the court sympathizes with the Defendants and their families as they have had to endure the expense and anxiety of two trials. The other factors weigh against dismissal with prejudice. While each trial took several weeks of this court's time and resources, they were not so lengthy as to impede this court's administration of justice. The majority of all jurors who deliberated in this case voted to convict on both counts. The evidence against Defendants is strong, as it consists of hours of incriminating videos and literally bucket-loads of methamphetamine worth close to $2.5 million dollars. The charges against Defendants are serious—a conviction will lead to a minimum 10-year sentence. Given that the government intends to re-try this case in California, there is a high likelihood that a third trial will result in a different outcome. Finally, there has been no indication that the prosecutor has acted improperly or unprofessionally. In sum, even if this court were to apply the type of factor-based test described by *Rossoff*, *Ingram*, and the *Wright* district courts, this court will decline to adopt the factors in the case at bar.

Accordingly, Defendants' motion to dismiss with prejudice is **DENIED**.

**B. The Government's Motion to Dismiss Without Prejudice**

The government moves to dismiss pursuant to Federal Rule of Criminal Procedure 48(a), which authorizes the government to dismiss an indictment without prejudice "with leave of court." The Ninth Circuit has made clear that "the district court's discretion to deny leave is limited." *United States v. Gonzalez*, 58 F.3d 459, 461 (9th Cir. 1995); *see also United States v.*

*Hayden*, 860 F.2d 1483, 1487 (9th Cir. 1988) ("Rule 48(a) was not enacted for the purpose of usurping the traditional role of the prosecutor to determine whether to terminate a pending prosecution."). "[T]he fundamental consideration for the district court is whether the government's motion is made in good faith—in which case the court should grant the motion—or if the government is acting in bad faith—in which case the court should deny it." *Hayden*, 860 F.2d at 1487.

Defendants argue that several factors indicate the Government has acted in bad faith. In particular, they note that this case was originally filed in California, but then dismissed so that the Government could prosecute this case in Guam. Opp. at 7, ECF No. 608. Now, after three years and two mistrials, the Government moves to dismiss again and return this case to California. *Id.* at 7-8. Defendants allege that this sequence of events indicates the Government is engaging in bad faith forum-shopping. *Id.* at 8.

The Government replies that it "simply seeks to try this case in a forum where both the defendants and the Government can have a fair and impartial trial." Reply at 3, ECF No. 609. In the related MJ 19-00003 removal proceeding, the government submitted several exhibits that indicate that a juror in the second trial was improperly influenced. *See* MJ 19-00003, ECF No. 16. In one exhibit, a phone conversation between Defendant Moser and Mr. Mantonana, an investigator who works for Ms. Moser's attorney, Mr. Mantonana tells Ms. Moser, "I have people that's gonna come in on Monday. . . . I want them to show up just for . . . If I have to pay fifty dollars for the . . . . my brother, my brother really knows one person, you know who I'm talking about." *Id.* at 3 (Exbt. 2). Apparently, talking about the same "one person," Mr. Mantanona reports that his brother instructed that person (the juror) "to be the foreman" and "if they don't agree, at least . . . you know . . . vote 'NG.'" *Id.* at 4. While Ms. Moser said little during this conversation, what she did say was compelling evidence that, at the very least, she knew that a

7

member of her defense team was attempting to obstruct justice by improperly influencing a juror. Each time "Boom" told her something, she would either say "okay" (15 times) or "yeah" (four times). *Id.* at 4.

The Government also submitted evidence that Mr. Martinez was likewise aware of a misconduct. During a phone call shortly after the second mistrial was declared, we hear the following exchange:

> Martinez: BOOM, nah, nah, BOOM, thank you so much man, and…
> Mantanona: Guess who called me, and said its charged man?
> Martinez: Who called you?
> Mantanona: Greg called me.
> Martinez: Oh shit, BOOM, let's not, let's not talk about it on the phone, BOOM!

MJ 19-00003, ECF No. 16, at Exbt. 3. This court notes that Mr. Mantanona is commonly known as "Boom", and that "Greg" is the first name of the juror whom the Government claims was improperly influenced by Mr. Mantanona. At the end of this conversation, Mr. Martinez instructs Mr. Mantanona to "[g]et the numbers how many was for us in there." Mr. Martinez then adds, "And who, who was who. We want to know who was who BOOM." *Id.* The court finds compelling evidence that Mr. Martinez also knew that a juror member was improperly influenced by Mr. Mantanona, the defense investigator.

The court finds that the Government's exhibits constitute compelling evidence that Defendants—or at the very least a member of Defendant Moser's defense team—took advantage of a juror's personal relationship to taint that juror's decision-making. This evidence substantiates the Government's stated reason for trying this case in California. In a trial in Los Angeles, it is significantly less likely that jury members will have personal relationships that Defendants can use to improperly influence their votes.

In conclusion, after having carefully considered the unique circumstances of this case, the court sees no evidence that the Government is acting in bad faith in moving to dismiss the

Indictment *without prejudice*. Particularly in light of the evidence of jury tampering in the second trial, the Government reasonably believes that it will more likely receive a fair trial in California than in Guam. Therefore, because this court finds that the Government is acting in good faith in making its motion, the Government's Motion to Dismiss Without Prejudice is **GRANTED**.[3]

### III. CONCLUSION

For the foregoing reasons, the Indictment is **DISMISSED *WITHOUT PREJUDICE***, *nunc pro tunc* to January 29, 2019. In the event this case is returned to Guam, the court will consider sequestering the jury because of the evidence of jury tampering. At trial, the court was very specific with its instructions and made it clear to the jurors that they were "not to speak to anyone on any subject connected with this trial." Notwithstanding, it appears that this instruction was not followed. Federal courts stand as the stalwart beacons of fairness and justice. The specter of jury tampering undermines public confidence in that role. In light of the court's concern about the events surrounding the second trial, a separate miscellaneous case(s) will be opened in order to address the issue of the court's jury instructions.

**SO ORDERED** on this 25th day of February, 2019.

/s/ Frances M. Tydingco-Gatewood
**Frances M. Tydingco-Gatewood**
**Chief Judge, District Court of Guam**

---

[3] In the event that this case returns to Guam and evidence of bad faith emerges, this court notes that it will be free to reevaluate this decision. *See Hayden*, 860 F.2d at 1488-89 ("Of course, had the district judge concluded and specifically found that the government utilized the Rule 48(a) motion as a pretext to bypass his denial of the continuance, a clear act of bad faith, he could have reversed his earlier Rule 48(a) ruling.").